IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATIONAL LABOR RELATIONS
BOARD,

      Petitioner,

v.

UPMC PRESBYTERIAN
SHADYSIDE,

      Respondent.

14mc00109

**ELECTRONICALLY FILED**

---

NATIONAL LABOR RELATIONS
BOARD,

      Petitioner,

v.

UPMC,

      Respondent.

14mc00110

**ELECTRONICALLY FILED**

---

NATIONAL LABOR RELATIONS
BOARD,

      Petitioner,

v.

UPMC,

      Respondent.

14mc00111

**ELECTRONICALLY FILED**

**SUPPLEMENTAL/AMENDED MEMORANDUM OPINION GRANTING NLRB'S
THREE APPLICATIONS TO ENFORCE SUBPOENA DUCES TECUM**

I. <u>Overview</u>

The matters currently pending before this Court, which were assigned while the undersigned was serving as the Miscellaneous Judge at the time of filing, are three (3) Applications for Summary Order(s) Enforcing Subpoena Duces Tecum:

1. The National Labor Relation Board's (NLRB's) Subpoena Duces Tecum No. B-720565, directed to UPMC Presbyterian Shadyside ("Presbyterian"), filed at 14mc00109;

2. NLRB's Subpoena Duces Tecum No. B-720563, directed to UPMC, filed at 14mc00110; and

3. NLRB's Subpoena Duces Tecum No. 720504, issued at the request of SEIU Union ("SEIU" or "Union"), directed to UPMC, filed at 14mc00111.

The scope and nature of the three (3) Subpoenas, individually and collectively, are overly broad and unfocused. The Court has never seen a document request/Subpoena Duces Tecum of such a massive nature. The Court does not see how these requests have any legitimate relationship or relevance to the underlying alleged unfair labor practices;[1] instead, the requests seek highly confidential and proprietary information (except for a few public documents); the requests have no proportionality to the underlying charges;[2] and, the requests seek information that a union would not be entitled to receive as part of a normal organization effort. Indeed, the scope and nature of the requests, coupled with the NLRB's efforts to obtain said documents for,

---

[1] The NLRB, in its briefing, does little to tie these requests to the underlying charges, except with respect to the single employer allegations, and a broad statement that the Consolidated Complaint "alleged violations of Section 8(a)(1), (3) and (4) of the Act." Doc. No. 2 at p. 2.

[2] While the Court notes that Federal Rule of Civil Procedure 26 is not solely applicable to the present scenario (as Federal Rule of Civil Procedure 45 addresses subpoena issues), there are newly approved amendments to the Federal Rules of Civil Procedure (pending Judicial Conference Review) addressing the need for proportionality of discovery requests. The language of the proposed amendment to Rule 26(b)(1) states: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and <u>proportional to the needs of the case</u>, considering the amount in controversy, the importance of the issues at stake in the action, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." www.uscourts.gov/uscourts/RulesAndPolicies/rules/civil_rules_redline.pdf. (emphasis added.) The Court notes also that Respondent essentially argues proportionality in its responsive briefing. Doc. No. 14 at p. 6-7.

and on behalf of, the SEIU, arguably moves the NLRB from its investigatory function and enforcer of federal labor law, to serving as the litigation arm of the Union, and a co-participant in the ongoing organization effort of the Union.[3]

The requests are so extensive that the Court will not attempt to list them in this Opinion, but instead has attached these requests hereto. See Attachment 1 (14mc00109), Attachment 2 (14mc00110), and Attachment 3 (14mc00111).

II. Background

Certain employees at Presbyterian were in the early stages of attempting to unionize through the SEIU when certain unfair labor practices allegedly began to occur.

The underlying charges argue that on November 19, 2012, Presbyterian began engaging in: surveillance of its employee's union activities and making the surveillance known to employees; interrogating its employees about their union activities; threatening and impliedly threatening employees with discipline and even arrest, if they continued to support the union movement; and selectively enforcing its solicitation policies again employees who supported the union. (Doc. No. 1-3 at p.15; Doc. No. 1-8 p. 2.)

SEIU filed charges with the NLRB in relation to these unfair labor practices and then the National Labor Relations Board issued an Order Consolidating the Cases. In its Amended Consolidated Complaint, the NLRB alleged that Presbyterian and UPMC are a single-employer within the meaning of the National Labor Relations Act (NLRA). 29 U.S.C. § 161, *et. seq.*[4]

---

[3] On March 20, 2014, the same day as the Application for Summary Order Enforcing Subpoena Duces Tecum No. was filed by the NLRB at 14mc00109, 14mc00110, and in 14mc00111, counsel for the SEIU filed her appearance as an "interested party." See Doc. No. 3.

[4] 29 U.S.C. § 162(c) states: "In case of contumacy or refusal to obey a subpoena issued to any person, any district court of the United States or the United States courts of any Territory or possession, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of

UPMC contends that it is not a single employer and therefore is not a proper party to this suit. This argument was previously raised by UPMC in a motion before the ALJ, which was denied. (Doc. No. 1-12).

III. Procedural History

The following is the procedural history for Subpoena Duces Tecum Nos. B-7205654 (14mc00109), No. B-720563 (14mc00110), and No. B-720504 (14mc00111), respectively:

- April 2013 – the SEIU filed numerous unfair labor practice charges against UPMC and Presbyterian alleging various violations of the NLRA with respect to approximately 22 separate case numbers. (Doc. No. 1-10 p. 2; Doc. No. 1-3).[5]

- September 30, 2013 – the Regional Director of Region 6 of the NLRB issued an Order Consolidating Cases and a Consolidated Complaint, and Notice of Hearing Against Respondent (UPMC and Presbyterian). (Doc. No. 1-10 p. 3).

- October 25, 2013 - At the request of Counsel for the SEIU and pursuant to Section 11(1) of the NLRA, the Regional Director for Region 6 issued Subpoena B-720504, directing the Custodian of Records of the Respondent to appear before an ALJ on the NLRB, which was reset twice (due to a government shutdown) to occur on February 3, 2014, to produce various documents. (Doc. No. 1-10. p 3.)

- November 5, 2013 – the Regional Director of Region 6 issued an Order further Consolidating Cases and Amendment to Consolidated complaint against Respondent Presyterian. (Doc. No. 1-11 at p.3).

- January 9, 2014 – the Regional Director issued Second Order Further Consolidating Cases and Amended Consolidated Complaint. This Order added 2 additional cases beyond the 22 that appeared in the initial Consolidated Complaint, Cases 6-CA-111578, and 6-CA-115826. Further, in the Amended Consolidated Complaint, <u>single employer allegations were added</u>. (Doc. No. 1-11pp. 2-3).

---

contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof."

[5] The Court has referenced the docket of the first case, 14mc00109, although the procedural history of all three matters is basically the same.

- January 14, 2014 - Pursuant to Section 11(1) of the NLRA, the Regional Director issued Subpoenas Duces Tecum Nos. B-720565 and B-720563, directing the Custodian of Records of Respondent to appear before an ALJ of the NLRB on February 2, 2014, to produce various documents (Doc. 1. p. 3).

- On or about January 23-27, 2014 - Respondents filed Petitions to Revoke all three (3) Subpoenas. (Doc. No. 1. p. 4).

- January 27, 2014 – Respondents moved that (1) single employer allegations concerning UPMC and Presbyterian be dismissed; and (2) UPMC be dismissed as a Respondent. (Doc. No. 1-11 p. 1).

- February 7, 2014 - ALJ denied Motion to Dismiss, which read in its entirety "[t]he Respondents' Motion to Dismiss Amendment to the consolidated complaint is denied. The Respondents have failed to establish that the amendments are improper and that they are entitled to judgment as a matter of law." (Doc. No. 1 p. 5 and Doc. No. 1-12).

- February 24, 2014 - ALJ denied Respondents' Petition to Revoke Subpoenas on the record at a hearing in the alleged unfair labor practice proceeding except as follows:

    o Paragraph 35 in No. 720565:
    o Paragraph 35 in No. 720563
    o Paragraphs 1-4, 10-11, 17, 19-21, 26-28, 39, 49-53, 57, 60-65, and 67-69 in No. 720504 (Doc. No. 1-9, pp. 5-6).
    o Nothing prohibits in the ALJ's decision prohibits the NLRB from sharing said documents with the SEIU, or with anyone else (Doc. No. 1-9).

- February 27, 2014 - Counsel for Respondents noted in an email that notwithstanding the ALJ's ruling, it did not intend to comply with any Subpoena because it is not a single employer with Presbyterian (Doc. No. 1-7).

- March 20, 2014 - NLRB filed the instant Applications for Summary Order(s) Enforcing Subpoenas in this Court (Doc. No. 1).

IV. Standard of Review[6]

A District Court should enforce an administrative subpoena if the following elements are met: (1) if is for a legitimate and proper purpose; (2) if the inquiry is reasonably relevant to the purpose; and (3) if the demand is not too indefinite, too broad, or unreasonable. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1964); *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943); *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992) (citing *United States v. Powell*, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-255, 13 L.Ed.2d 112 (1964)). As set forth by the United States Court of Appeals for the Third Circuit, "Courts must insist that the agency 'not act arbitrarily or in excess of [its] statutory authority . . . . '" *NLRB v. Interstate Dress Carriers*, 610 F.2d 99, 111 (3d Cir. 1979) (quoting *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946)).

Therefore, in order to enforce these Administrative Subpoenas, the NLRB must demonstrate that: (1) its investigation has a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the agency does not already possess the information requested; (4) the agency has complied with relevant administrative requirements; and (5) the demand is not "unreasonably broad or burdensome." See 09mc00079 at Doc. No. 32-1 at 11, *E.E.O.C. v. Kronos Inc.*, 620

---

[6] As the Court set forth above, the NLRB's functions include "its investigatory function and enforcer of federal labor law." As further detailed above, the history of the current matter through various stages, included the filing of unfair labor practices, the investigation, the filing by the NLRB of a complaint and amended complaint, the issuance of the three Subpoenas currently in dispute, the proceedings before the Administrative Law Judge, and his rulings on UPMC's challenges to said Subpoenas. Thus, the NLRB proceeding has advanced from an administrative investigation to an administrative litigation/trial proceeding. However, the case law and applicable legal standards involving enforcement of subpoenas, whether issued pursuant to an administrative investigation or in the context of an administrative litigation/trial proceeding, are instructive and applicable. In fact, the briefing by both the NLRB and UPMC includes citations to the enforcement of subpoenas, whether they be in an investigatory or litigation/trial posture, interchangeably, see doc. nos. 2, 14, and 22, consistent with the language of § 161(2), which states this Court shall have jurisdiction "to issue to such a person an order requiring such person to appear before the Board . . . to produce evidence if so ordered . . . touching the matter under investigation or in question." 29 U.S.C. § 161(2).

F.2d 287 (3d Cir. 2010) (citing *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (other citations omitted)).

V. <u>Discussion</u>

    1. Applicable Test

Section 11(1) of the NLRA, 29 U.S.C. Section 161(1), provides that the Board shall have access to any evidence "that relates to any matter under investigation or in question." While the Board has no independent authority to enforce its subpoenas, Section 11(2) of the NLRA, 29 U.S.C. Section 161(2), grants jurisdiction to this Court to enforce Board subpoenas. An application for enforcement of an administrative subpoena is a summary proceeding, and the subpoena "must be enforced if the documents sought could be pertinent to a legitimate agency inquiry." *United States v. O'Neill,* 619 F.2d. 222, 228 (3d Cir. 1980). *See also NLRB v. O-T Shoe Mfg. Co.*, 409 F.2d 1247, 1253 (3d Cir. 1969).

The enforcement of subpoenas is confined to the discretion of Federal District Courts, although in passing on a request for enforcement of a subpoena, the NLRB contends that the District Court's intrusion into the NLRB's domain is narrowly restricted. Doc. No. 2 at 5. *See also Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450 (6th Cir. 1941). A court ordinarily will enforce an NLRB subpoena if the underlying investigation is within its authority and jurisdiction, the subpoena is not too indefinite, and the information sought is reasonably relevant to the investigation. *NLRB v. North American Van Lines, Inc.,* 611 F.Supp. 760 (N.D. 1985). Because the requirement that a subpoena for the production of evidence must merely relate to a matter under investigation, the scope of a District Court's inquiry includes determining whether: (1) the matter under investigation or pending before the NLRB is within the NLRB's jurisdiction

*NLRB v. ITT Telecommunications*, 415 F.2d 768 (6th Cir. 1969); *NLRB ex rel. Intern. Union of Elec., Radio and Mach Workers, AFL-CIO-CLC v. Dutch Boy, Inc. Glow Lite Division*, 606 F.2d 929 (10th Cir. 1979); (2) the subpoena to produce evidence describes matters sought with sufficient particularity with respect to the matter under investigation *NLRB v. ITT Telecommunications*, 415 F.2d 768 (6th Cir. 1969); and (3) the subpoena was regularly issued, duly served, and not obeyed by the party against whom it was issued. *Goodyear Tire & Rubber Co., v. NLRB*, 122 F.2d 450 (6th Cir. 1941).

As stated above, to obtain enforcement of an administrative subpoena, an agency must demonstrate that 1) its investigation has a legitimate purpose, 2) the inquiry is relevant to that purpose, 3) the agency does not already possess the information requested, 4) the agency has complied with relevant administrative requirements, and 5) the demand is not "'unreasonably broad or burdensome.'" *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (quoting *FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995)).

To this Court, its review of the three (3) Subpoena Duces Tecum demonstrates that (a) there is a minimal or no relationship between the Subpoenas and the underlying unfair labor practice charges; and (b) the unfair labor practices are being used, under the guise of the "single employer" rubric, to attempt to legitimize a massive document request. Further, after studying the three (3) Subpoena Duces Tecum (attached hereto), the Court concludes that compliance with the three (3) Subpoena Duces Tecum, as directed by the ALJ, would be an extensive, expensive, time-consuming, and potentially disruptive of the daily business activities of the Respondents, as well as requiring the disclosure of highly confidential and proprietary information (except for a few items that are public). Thus, based upon the current record and applying the applicable "test" (regarding whether the inquiry is relevant to a legitimate purpose and whether the demand

is unreasonably broad and burdensome), the Court would deny the three (3) Applications to Enforce Subpoena Duces Tecum in their current form.

        2. Kronos' Appellate Decisions

However, the Court's role in determining whether to enforce an agency subpoena is limited by the recent rulings of the United States Court of Appeals for the Third Circuit. *EEOC v. Kronos Inc.*, 620 F.3d 287 (3d Cir. 2010) (*Kronos I*); *EEOC v. Kronos Inc*., 694 F.2d 351 (3d Cir. 2012) (*Kronos II*). In *Kronos*, the United States Court of Appeals instructed this Court to enforce a broad subpoena issued by the EEOC to a non-party, Kronos Incorporated. By way of background, Kronos provided assessment testing services for Kroger, which used these services in its hiring process. The subpoena at issue was based upon a single complaint by an allegedly disabled woman who was not hired at Kroger's Clarksburg, West Virginia store, which the applicant alleged was in violation of the Americans with Disabilities Act of 1990. 42 U.S.C. § 12010, et seq. See 09mc00079 at Doc. No. 32. This Court denied the motion to enforce this subpoena because, although based upon a single complaint, at a single store, the subpoena would have required Kronos to provide information as to every Kroger store across the country and as to each employee who used this test. Id. at doc. no. 32-1 at pg. 16. On appeal, in *Kronos I*, the United States Court of Appeals for the Third Circuit directed this Court to order the enforcement of this subpoena.

In its subsequent Order (upon remand), this Court granted in part and denied in part the Application to Enforce the Administrative Subpoena. This Court denied the Application in part out of concern that a single instance of alleged discrimination, at a single store, was being used to obtain unrelated information as to Kronos and its testing methods. 09mc00079 at Doc. No. 50

at pgs. 31-32. The Court was also concerned about the implications of this subpoena on Kroger. In a second precedential opinion (*Kronos II*), the United States Court of Appeals for the Third Circuit rejected these concerns.

This Court's experience with the Kronos matter and its subsequent appellate history, leads this Court to believe that it is constrained in the current case, in that any denial of the present Applications to Enforce Subpoenas will not be affirmed. The Court remains concerned about the effects of broad subpoenas, especially in light of the fact that the investigation into Kronos/Kroger is still ongoing, despite the fact that the single underlying charge was filed over seven years ago. See Status Report of 03/28/2014 at 09mc00079, at doc. no. 79 at pg. 2.

### 3. Current Legal Predicament

This Court does not mean to suggest that the "applicable" legal framework for review of a subpoena of an administrative agency is no longer sound law (requiring a finding of legitimate purpose, that the inquiry be reasonably relevant to the purpose, and that the demand should not be too indefinite, too broad, or unreasonable). However, the practical effect of case law as to enforcement of subpoenas of federal government agencies is that this Court is constrained to essentially "rubber stamp" the enforcement of the Subpoenas at hand. As NLRB states in its brief,

> The Board's subpoena enforcement proceedings, authorized by Section 11(2) of the Act, are summary in nature . . . . [T]he proceedings plainly are of a summary nature not requiring the issuance of process, hearing, finding of fact, and the elaborate process of a civil suit . . . . District courts may 'untertake only an extremely limited inquiry' when determining whether an administrative subpoena is enforced.

Doc. No. 2 at pp. 3-4.

If the practical effect of this legal predicament is to be altered, it is not the District Court's role to do so, but the role of the appellate court. The Court is at a loss of how to adequately address the above issues of whether the matter under investigation serves legitimate purposes, whether the inquiry is relevant to that purpose, and not unduly broad or burdensome, while still conforming to the extremely narrow and limited nature of the proceedings at hand. If the United States Court of Appeals for the Third Circuit finds that the District Court has the authority to conduct a meaningful and/or thorough review of the three (3) Subpoena Duces Tecum at issue here, the Court is prepared to do so.

VI. Conclusion

Therefore, the Court will grant the three (3) Applications to Enforce Subpoena Duces Tecum, but will stay the implementation of this Order, so the Respondents may appeal the foregoing decision. An appropriate order follows.

SO ORDERED, this 2nd day of September, 2014

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge